CHARLES F. MARSLAND, JR., in his capacity as Prosecuting Attorney, City and County of Honolulu, State of Hawaii, Plaintiff-Appellee, *v.* INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, Defendant-Appellant, and LLOYD FELL and JOHN DOES, Defendants.

NO. 7350

CIVIL NO. 56267

FEBRUARY 1, 1983

LUM, ACTING C.J., NAKAMURA, J.,
RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED TEMPORARILY*

---

* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1982 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* This is an action for injunctive relief and for declaratory judgment brought by Togo Nakagawa,[1] as prosecuting attorney for the City and County of Honolulu, seeking to enjoin the International Society for Krishna Consciousness ("ISKCON") from allowing more than five *unrelated* persons to occupy the residential premises at 51 Coelho Way, City and County of Honolulu. The trial court granted the injunctive relief prayed for and entered declaratory judgment against ISKCON. The Society appeals.

ISKCON points out that the owner of the land and buildings at 51 Coelho Way in Nuuanu had in October, 1974, granted to the society and its members for the nominal sum of $1.00 per year the right to use the building and premises indefinitely, as a temple, in pursuance of the Krishna faith. The area is comprised of 74,412 square feet of cultivated grounds and is very much larger in size than most of the lots in the area.

---

[1] On June 24, 1981, this court granted the motion to substitute Charles F. Marsland, Jr., prosecuting attorney, for Togo Nakagawa, former prosecuting attorney, as plaintiff-appellee.

On the premises are the main two-story residential building and several other smaller structures, such as a maid's quarters and a guest house. In the two-story building are five bedrooms and two baths on the first floor and three bedrooms and two baths on the second floor. ISKCON points out that by this grant the society was able to establish for the first time a temple in Hawaii.

I.

Ordinance No. 3234, the City and County of Honolulu Comprehensive Zoning Code, as amended, ("CZC") does allow for the existence of a church in the R-3 Residential District where the Krishna "temple" is situated, but the prosecution argues, in effect, that where a church is also being used as a dwelling, then the provisions of the CZC restricting residency to not more than five *unrelated* persons must be applied. We agree.

Among the permissable uses and structures in an R-3 Residential District are churches and one-family detached dwellings. The subject two-story structure was originally designed and built as a one-family dwelling. It is now being used, however, as both a church and a place of residence. It qualifies as a church within the meaning of the ordinance because it is *regularly and predominantly* used as a place for public worship. *See Annot., 62 A.L.R.3d 197 (1975)*. Webster's Third New International Dictionary 404 (1967) also defines "church" to mean, *inter alia,* "a place of worship of any religion." ISKCON's daily schedule in the use of the building and premises essentially includes religious ceremonies, prayers, and lectures. The Krishnas also hold a feast on Sundays, to which the public is invited, as part of "the policy that is established around the Krishna movement." These activities are consistent with the use of structural premises as a place of religious worship.

A "residence" has been defined to mean a dwelling or structure where people live, *Murdock v. City of Norwood,* 67 N.E.2d 867 (Ohio 1946), and Matthew R. Whitmore, president and spiritual counselor of the "temple," explains the general use of the subject premises as a residence as follows:

[T]he main purpose of the temple is to give people the opportunity to understand about Krishna Consciousness. So sense [sic] it's a Center for Krishna Consciousness [.] [sic] [W]e have many people coming to the temple who don't have previous contact with Krishna Consciousness but who are interested in Krishna Consciousness. And so we invite them to stay with us and learn about Krishna Consciousness. . . . *They live with us, live the life style. And they go through the whole life style that we have, the whole way we live. . . . [w]hich includes sleeping with us.* [Emphasis added.]

It is undisputed that in excess of five unrelated Krishna devotees have resided on the premises in the practice of their religion. On February 8, 1979, for example, there were approximately thirty members living on the premises, more than five of whom were unrelated to each other. ISKCON explains that the living together of devotees with their Guru (even though their Guru is only with them in spirit) is a necessary part of the practice of the Krishna religion. When the structures on the premises are thus used as a residence, the pertinent provisions of the CZC become applicable. And when so applied, ISKCON was clearly in violation of the ordinance.

A "one-family dwelling" is defined as "a building containing one dwelling unit." CZC § 21-110. Only a family may reside in a one-family dwelling and the term "family" means:

[O]ne or more persons, all related by blood, adoption, or marriage, occupying a dwelling unit or lodging unit, provided that domestic servants employed only on the premises, may be housed on the premises and included as part of the family, provided further, that *in lieu of the above family and domestic servants no more than five unrelated persons may occupy a dwelling or lodging unit. . . .*[2] [CZC § 21-110] [Emphasis added.]

---

[2] Such a classification was held to be valid in Village of Belle Terre v. Boraas, 416 U.S. 1 (1974). *Compare* City of Santa Barbara v. Adamson, 27 Cal.3d 123, 610 P.2d 436 (1980); State v. Baker, 81 N.J. 99, 405 A.2d 368 (1979).

## II.

The more troublesome question is whether *res judicata* and collateral estoppel interpose a bar to the present action for injunctive relief and for declaratory judgment.

The facts which give rise to this particular issue are as follows: On February 2, 1978, ISKCON was charged in the district court of the first circuit with having violated the provisions of Section 21-521 of the CZC, 1969, as amended, in that "it did occupy or did cause to be occupied a two-story wood frame single-family dwelling by more than five unrelated persons on or about the 12th day of October 1976." The district court found ISKCON not guilty, holding that the structure was a church within the meaning of the ordinance and the "rule-of-five" did not, therefore, apply.

Subsequently, on November 20, 1978, the present action for injunctive relief and for declaratory judgment was filed in the circuit court.[3] The circuit court also found the subject structure to be a church, but held that the occupation of the building by more than five unrelated individuals was not permissible under the ordinance.

ISKCON argues, in effect, that inasmuch as the district court had entered a final judgment of acquittal in its favor on the penal charge of allowing more than five unrelated persons to occupy the subject structure at 51 Coelho Way, the issue of whether or not, on essentially the same facts, it was in violation of the ordinance could not be relitigated in a second action in

---

[3] The CZC provided two ways for the enforcement of its provisions. Section 21-106 of the CZC provided:

Violations and Penalties:

(a) The City may maintain an action for an injunction to restrain any violation of the provisions of this Chapter and may take any other lawful action to prevent or remedy any violation.

(b) Any person violating any provision of this Chapter shall upon conviction, be punished by a fine not exceeding $1,000 or by imprisonment not exceeding thirty days, or by both such fine and imprisonment. The continuance of any such violation after conviction shall be deemed a new offense for each day of such continuance.

the same or a different court. ISKCON, in other words, is seeking to interpose in the present case the doctrines of double jeopardy, *res judicata,* and collateral estoppel.

In *Ellis v. Crockett,* 51 Haw. 45, 55-56, 451 P.2d 814, 822-823 (1969), this court defined *res judicata* and collateral estoppel as follows:

> The doctrine of *res judicata* basically provides that "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided."
>
> Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue. [Citations omitted.]

Clearly, ISKCON could not again be penally charged on essentially the same facts for the violation of the ordinance. Double jeopardy would constitute a bar to the second prosecution. *Cf. Ashe v. Swenson,* 397 U.S. 436 (1970). We do not, however, have that situation before us. The diametrically conflicting conclusions drawn by the district court and the circuit court turned upon their respective interpretations of the applicable provisions of the CZC. ISKCON's acquittal in district court rested upon that court's determination of a *question of law.* In that regard we find the following statement of the rule in the Restatement of the Law (Second) Judgments § 28 (1980) to be particularly apropos:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

(2) The issue is one of law and . . . a new determination is warranted . . . to avoid inequitable administration of the laws. . . .

The Restatement then goes on to point out in comment c that a reexamination of the rule of law is appropriate in circumstances where "preclusion would result in a manifestly inequitable administration of the laws."

We have made it clear in this opinion that the district court erred in its interpretation and application of the provisions of the CZC. In applying the doctrine of *res judicata* as ISKCON would have us do, we would be permitting it to continue to violate the ordinance without fear of governmental sanctions while at the same time warning other parties that the same ordinance would be enforced against them. This would be an absurd and unreasonable application of the doctrine. The injunction against ISKCON is not a penalty for its past violations of the ordinance. It simply enjoins ISKCON from further violating the applicable provisions of the CZC.

Moreover, it has been held (and we think properly so) that dismissal or acquittal on a criminal charge will not necessarily bar an action for an injunction to prevent further violations, even where the petition for the injunction is founded upon the same alleged violation that motivated the prior criminal prosecution. Thus, in *City of New Orleans v. Lafon,* 61 So.2d 270 (La.App. 1952), the Louisiana appellate court held that an injunction may issue even if the defendant had previously been acquitted in a criminal prosecution for allegedly violating a zoning ordinance. In *Lafon* the defendant was operating a trailer court which the City of New Orleans claimed was a violation of its zoning law. In upholding the right of the City to apply for an injunction even after the defendant's acquittal on the criminal charge, the court observed:

> There are two divergent views on the question of whether the violation of a criminal statute gives rise to the right to enjoin, but under both views it is felt that, where there is involved a property right which would not be adequately protected by criminal prosecution, the right to injunction vests regardless of whether there may also be a

criminal prosecution. [61 So.2d at 273.]

The Louisiana court pointed out that the rights of other property owners in the zoning district where the violations occurred must necessarily be considered. Only by an injunction could these property rights be protected and the objectives of the ordinance promoted.

Other courts have similarly held that an acquittal in a criminal prosecution for violation of a zoning ordinance is not res judicata in a civil proceeding for the enforcement of the zoning ordinance. *See Town of Natick v. Sostilio,* 358 Mass. 342, 264 N.E.2d 664 (1970); *Blackmon v. Richmond County,* 224 Ga. 387, 162 S.E.2d 436 (1968); *City of Girard v. Girard Egg Corp.,* 87 Ill.App.2d 74, 230 N.E.2d 294 (1967).

Affirmed.[4]

*John F. Schweigert* for defendant-appellant.

*Thomas M. Pico, Jr.,* Deputy Prosecuting Attorney for plaintiff-appellee.

---

[4] We find the other specifications of error, in the factual circumstances of this case, to be without merit.