111 P.3d 587

Linda LINGLE,[1] Governor, State of Hawai'i, Petitioner/Appellant–Appellee,

v.

HAWAI'I GOVERNMENT EMPLOYEES ASSOCIATION, AFSCME, Local 152, AFL–CIO; Mufi Hanneman, Mayor, City and County of Honolulu; Harry Kim, Mayor, County of Hawai'i; Bryan J. Baptiste, Mayor, County of Kauai; and Alan M. Arakawa, Mayor, County of Maui, Intervenors/Appellants–Appellees,

v.

United Public Workers, AFSCME, Local 646, AFL–CIO, Intervenor/Appellee–Appellant,

v.

Hawai'i Labor Relations Board, Appellee–Appellee.

No. 24237.

Supreme Court of Hawai'i.

March 31, 2005.

1. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c) (2004), Governor Linda Lingle and Mayors Mufi Hanneman, Harry Kim, Bryan Baptiste, and Alan Arakawa were substituted as parties to the instant appeal.

Herbert R. Takahashi (of Takahashi, Masui & Vasconcellos), Honolulu, on the briefs, for intervenor/appellee-appellant United Public Workers, AFSCME, Local 636.

Charles K.Y. Khim, Honolulu, on the briefs, for intervenor/appellant-appellee Hawai'i Government Employees Association, AFSCME, Local 152, AFL–CIO.

Kathleen N.A. Watanabe and Daniel A. Morris, Deputy Attorneys General, on the briefs, for petitioner/appellant-appellee Linda Lingle, Governor, State of Hawai'i, joining in HGEA's first amended answering brief.

Paul T. Tsukiyama, Deputy Corporation Counsel, on the briefs, for intervenor/appellant-appellee Mufi Hanneman, Mayor, City and County of Honolulu, joining in HEGA's first amended answering brief.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; ACOBA, J., concurring separately.

Opinion of the Court by MOON, C.J.

Intervenor-appellee-appellant United Public Workers, AFSCME Local 646, AFL–CIO [hereinafter, UPW] appeals from the first circuit court's [2] April 25, 2001 final judgment (1) remanding this case to appellee Hawai'i Labor Relations Board (HLRB) for further proceedings regarding its order denying petitioner-appellant-appellee the State of Hawai'i Department of Transportation's (DOT) petition for a declaratory ruling and (2) denying UPW's motion to dismiss intervenor-appellant-appellee Hawai'i Government Employees Association, AFSCME, Local 152, AFL–CIO's [hereinafter, HGEA] July 7, 2000 notice of appeal to the circuit court. On appeal to this court, UPW challenges the circuit court's: (1) determination that it had jurisdiction to review the HLRB's refusal to issue a declaratory ruling pursuant to Hawai'i Revised Statutes (HRS) § 91–14 (1993); (2) allowance of a collateral attack on a court-confirmed arbitration award; and (3) conclusion that the underlying dispute in this case was not moot.

Based on the following, we affirm the April 25, 2001 final judgment.

I. BACKGROUND

A. Factual Background

The dispute in the instant case originated from the DOT's temporary work assignment

---

2. The Honorable Sabrina S. McKenna presided over the matter at issue on appeal.

involving the landscaping crew of the highway maintenance operations in Kāneʻohe and implicates the collective bargaining agreements (CBA) of UPW and HGEA.[3] Specifically, on June 17, 1996, the DOT temporarily awarded a vacant Bargaining Unit 2 (BU–02) position in the "Windward Crew" to a BU–02 employee from another baseyard. As a result, UPW—the collective bargaining agent for Bargaining Unit 1 (BU–01) employees—filed a grievance against the DOT on behalf of William Kapuwai, a BU–01 truck driver for the DOT and the most senior employee in the Windward Crew. UPW alleged that its CBA [hereinafter, CBA1] required the DOT to award the temporary assignment to Kapuwai.[4] After exhausting all the remedies required by CBA1, UPW submitted notice of its intent to arbitrate the grievance to the DOT.

## B. Procedural Background

### 1. Arbitration Proceedings and Circuit Court Confirmation

On October 8, 1997, arbitration proceedings between UPW and the DOT commenced. *HGEA was not a party to the arbitration.* UPW contended that the DOT violated CBA1 by awarding the temporarily vacant BU–02 position in the *Windward Crew* to a BU–02 employee from *another baseyard.* The DOT responded that the right to award temporary assignments was a "management right" under HRS § 89–9(d) (1993)[5] and, therefore, preempted any con-

tradictory provision in CBA1. In other words, the DOT asserted that, even if its award of a BU–02 temporary assignment to a BU–02 employee from another baseyard violated CBA1, it was entitled to do so as of right under HRS § 89–9(d).

On May 11, 1998, the arbitrator issued a final written decision and award in favor of UPW, in which he ruled that the right to issue temporary assignments was not a management right and, therefore, the DOT violated CBA1. On May 15, 1998, UPW moved the circuit court to confirm the arbitration award, which the circuit court, the Honorable Kevin S.C. Chang presiding, granted on July 21, 1998.

### 2. Proceedings Before the HLRB

While the arbitration proceedings were still in progress, the DOT, on October 20, 1997, submitted a petition to the HLRB for a declaratory ruling [hereinafter, petition] pursuant to HRS § 91–8 (1993)[6] and Hawaiʻi Administrative Rules (HAR) Rule 12–42–9 (1981)[7] as to whether a ruling by the arbitrator that the DOT must award a BU–01 employee a temporarily vacant BU–02 position would violate the DOT's management rights under HRS § 89–9(d). The DOT alleged that the arbitrator only had jurisdiction to interpret CBA1 and, therefore, a decision by the arbitrator requiring the DOT to award temporary BU–02 assignments to BU–01 employees would require the DOT to knowingly violate the CBA2 provision mandating that

---

**3.** The collective bargaining agreements for UPW and HGEA define temporary assignments as "the assignment by a competent authority and the assumption, without a formal change in position assignment, of the significant duties and responsibilities of another person[.]"

**4.** BU–01 is made up of employees in the State in non-supervisory blue-collar positions. HRS § 89–6(a)(1) (Supp.1996). Under CBA1, a temporary assignment must be awarded to the *most qualified employee in the baseyard* who is in the class immediately below that of the temporarily vacant position. CBA1 does not specify whether BU–01 employees may be assigned to non–BU–01 positions.

We note that BU–02 is made up of employees in the State in supervisory blue-collar positions, HRS § 89–6(a)(2) (Supp.1996), and are represented by HGEA. Unlike CBA1, HGEA's CBA

[hereinafter, CBA2] specifically provides that priority for temporarily vacant BU–02 positions must be given to the *most senior BU–02 employee in the baseyard or the DOT's Highway Division* who is in the class immediately below that of the vacancy. In other words, CBA2 requires that only BU–02 employees can fill temporary BU–02 vacancies.

**5.** HRS § 89–9(d)(3) provides in pertinent part: "The employer and the exclusive representative shall not agree to any proposal which would ... interfere with the rights and obligations of a public employer to ... hire, promote, transfer, assign, and retain employees in positions[.]"

**6.** HRS § 91–8 is quoted in section III.A, *infra.*

**7.** HAR Rule 12–42–9 is quoted in section III.A, *infra.*

BU–02 temporary assignments be awarded to BU–02 employees.

On November 7, 1997, HGEA filed a petition to intervene in the declaratory proceedings, alleging, *inter alia*, that UPW's attempt to require the DOT to assign BU–02 positions to BU–01 employees infringed upon HGEA's rights as the exclusive bargaining representative of BU–02 employees to "bargain over the promotion and transfer of employees to positions within BU–02" under HRS § 89–8(a) (1993).[8] On November 10, 1997, UPW also filed a petition to intervene on the ground that the proceedings implicated the temporary assignment rights of BU–01 employees under CBA1. Soon thereafter, all counties in the State filed petitions to intervene on the ground that their rights to award temporary assignments could be affected by the HLRB's declaratory ruling. The HLRB granted all of the intervenors' motions on December 31, 1997.

On January 21, 1998, UPW filed a memorandum urging the HLRB to refrain from issuing a declaratory ruling, alleging, *inter alia*, that (1) the HLRB lacked jurisdiction because the dispute was properly submitted to "final and binding" arbitration; (2) the DOT lacked standing to seek relief because its practices and policies were consistent with the proper exercise of "management rights" under HRS § 89–9(d); (3) the proceedings for declaratory relief constituted an impermissible collateral attack on the confirmed arbitration award; and (4) the DOT was collaterally estopped from relitigating the same issues presented in the arbitration proceedings.

On June 7, 2000, the HLRB entered an order denying the petition for a declaratory ruling [hereinafter, HLRB's order] pursuant to HAR Rule 12–42–9(f), in which the HLRB found that "the issues herein are moot as the Arbitration Award has been rendered and confirmed and there is no actual controversy between the parties at this stage." In es-

sence, the HLRB refused to issue a declaratory ruling on the merits.

### 3. Appeal of the HLRB Decision to the Circuit Court

On July 7, 2000, HGEA filed a notice of appeal to the circuit court, the Honorable Sabrina S. McKenna presiding, from the HLRB's order. On appeal, HGEA contended, *inter alia*, that the HLRB's deferral to the arbitration award was improper inasmuch as: (1) the issue of whether temporary assignments was a management right under HRS § 89–9(d) was not moot; and (2) HGEA's rights under HRS §§ 89–8(a) and 89–9(d) as the exclusive bargaining representative of BU–02 employees were violated. Thus, HGEA requested that the circuit court order the HLRB to issue a declaratory ruling on these issues. After reviewing the matter under *HRS § 91–14(g)(4) (1993)*, the court determined that it was an "error of law" for the HLRB to conclude that the dispute was moot "inasmuch as the petition for declaratory ruling, as stated, indicates a recurring problem." As such, the circuit court remanded the case to the HLRB to enter a declaratory ruling.

Final judgment was entered on April 25, 2001. On April 30, 2001, UPW filed its timely notice of appeal to this court.

## II. *STANDARDS OF REVIEW*

### A. *Jurisdiction*

■ The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

---

8. HRS § 89–8(a) provides in pertinent part:
 The employee organization which has been certified by the board as representing the majority of employees in an appropriate bargaining unit shall be the exclusive representative of all employees in the unit. As exclusive repre-

sentative, it shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership.

*Amantiad v. Odum*, 90 Hawai'i 152, 158–59, 977 P.2d 160, 166–67 (1999) (citations and quotation marks omitted).

B. *Statutory Interpretation*

 Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool."

This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning."

*Guth v. Freeland*, 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001) (citations omitted) (ellipses points in original).

C. *Review of an Agency Decision*

 Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [ (1993) ] to the agency's decision.

HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2) and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

*Paul's Elec. Serv., Inc. v. Befitel*, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004) (citations and some quotation marks omitted) (brackets in original).

### III. DISCUSSION

On appeal, UPW contends that the circuit court: (1) did not have jurisdiction to review the HLRB's order under HRS § 91–14; (2) improperly allowed a collateral attack on a court-confirmed arbitration award; and (3) erred in concluding that the underlying dispute in this case was not moot.

A. *Jurisdiction to Review the HLRB's Order*

 UPW contends that the circuit court did not have jurisdiction to review the HLRB's order under HRS § 91–14 because the HLRB's order did not result from a contested case. HGEA, on the other hand, maintains that, pursuant to HRS §§ 91–8

and 91–14, a contested case was unnecessary in order to confer jurisdiction upon the circuit court.

The right to appeal is purely statutory and exists only when jurisdiction is given by some constitutional or statutory provision. *Burke v. County of Maui*, 95 Hawai'i 288, 289, 22 P.3d 84, 85 (2001); *Oppenheimer v. AIG Hawai'i Ins. Co.*, 77 Hawai'i '88, 91, 881 P.2d 1234, 1237 (1994); *Chambers v. Leavey*, 60 Haw. 52, 57, 587 P.2d 807, 810 (1978). Jurisdiction is conferred upon circuit courts to review administrative decisions by HRS § 91–14, which provides in pertinent part:

> (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter. . . .

In other words, appellate review of a final administrative decision is available where the decision results from a "contested case." *See Pub. Access Shoreline Hawai'i v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) [hereinafter, *PASH* ].

A contested case is defined in HRS § 91–1(5) (1993) as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." In *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 134, 870 P.2d 1272, 1278 (1994), this court held:

> If the statute or rule governing the activity in question does not *mandate* a hearing[9] prior to the administrative agency's decision-making, the actions of the administrative agency are not "required by law" and do not amount to "a final decision or order in a contested case" from which a direct appeal to circuit court is possible.

(Emphasis in original); *see also PASH*, 79 Hawai'i at 431, 903 P.2d at 1252. Thus, pursuant to HRS § 91–14, in order for proceedings before an agency to constitute a contested case from which an appeal can be maintained, the agency must be required by law to hold a hearing before a decision is rendered. Stated differently, discretionary hearings are not contested cases because they are not required by law. *See Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 68, 881 P.2d 1210, 1214 (1994).

In the instant case, the HLRB's order was issued pursuant to HRS § 91–8 and HAR Rule 12–42–9. HRS § 91–8 provides:

> Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. *Orders disposing of petitions in such cases shall have the same status as other agency orders.*

(Emphasis added). HAR Rule 12–42–9 was promulgated pursuant to HRS § 91–8 and states in pertinent part:

> Declaratory rulings by the board.
>
> (a) Any public employee, employee organization, public employer, or interested person or organization may petition the board for a declaratory order as to the applicability of any statutory provision or of any rule or order of the board.
>
> . . . .
>
> (f) The board may, for good cause, refuse to issue a declaratory order. Without limiting the generality of the foregoing, the board may so refuse where:
>
> (1) The question is speculative or purely hypothetical and does not involve existing facts or facts which can reasonably be expected to exist in the near future.
>
> (2) The petitioner's interest is not of the type which would give the petitioner standing to maintain an action if such petitioner were to seek judicial relief.
>
> (3) The issuance of the declaratory order may adversely affect the interests of the board or any of its offi-

---

9. An "agency hearing" is defined as a "hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." HRS § 91–1(6) (1993).

cers or employees in a litigation which is pending or may reasonably be expected to arise.

(4) The matter is not within the jurisdiction of the board.

....

(h) *Hearing:*

(1) *Although in the usual course of processing a petition for a declaratory ruling no formal hearing shall be granted to the petitioner, the board may, in its discretion, order such proceeding set down for hearing.*

(2) Any petitioner who desires a hearing on a petition for declaratory ruling shall set forth in detail in a written request the reasons why the matters alleged in the petition, together with supporting affidavits or other written evidence and briefs or memoranda or legal authorities, will not permit the fair and expeditious disposition of the petition and, to the extent that such request for hearing is dependent upon factual assertion, shall accompany such request by affidavit establishing such facts.

(Emphases added).

As illustrated above, HRS § 91–8 and HAR Rule 12–42–9 do not require the HLRB to hold a hearing prior to issuing a ruling on a declaratory petition. In fact, HAR Rule 12–42–9(h)(1) specifically provides that a hearing is discretionary. Because there is clearly no statutory mandate or administrative rule entitling the DOT to a hearing, it would appear that the HLRB's order does not result from a contested case.

HGEA, however, contends that the HLRB's order need not result from a contested case and that, read together, HRS §§ 91–8 and 91–14 conferred jurisdiction upon the circuit court. We agree. HRS § 91–8 provides that "[o]rders disposing of petitions [for declaratory rulings] shall have the same status as other agency orders." Inasmuch as the phrase "other agency orders" is not defined anywhere in the Hawai'i Administrative Procedure Act (HAPA), HRS Chapter 91, and is unclear on its face, we look to extrinsic aids in order to determine

what the legislature intended by "other agency orders." *See Freeland,* 96 Hawai'i at 149–50, 28 P.3d at 984–85 ("When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.... In construing an ambiguous statute ... the courts may resort to extrinsic aids in determining legislative intent.")

One avenue in construing an ambiguous statute is the use of legislative history as an interpretive tool. *Id.* According to a House Standing Committee Report, a basic purpose of HAPA is to "provide for judicial review of agency decisions and orders on the record, except where the right of trial de novo, including the right of trial by jury, is provided by law." Hse. Stand. Com. Rpt. No. 8, in 1961 House Journal at 655 [hereinafter, House Report]. Additionally, in addressing an agency's refusal to issue a declaratory ruling under HAPA—such as that in the instant case—the House report states that, "[s]ince the refusal in itself would be an agency order, in appropriate cases, application for judicial review on the grounds that denial was an abuse of discretion on the part of the agency may be made." *Id.* at 659. Thus, we believe the legislature intended the phrase "other agency orders" to permit review of petitions for declaratory relief.

Moreover, we note that this court has consistently recognized that circuit courts have jurisdiction, pursuant to HRS § 91–14, to review orders disposing of petitions for declaratory rulings. *See e.g., Vail v. Employees' Ret. Sys.,* 75 Haw. 42, 49–51, 856 P.2d 1227, 1232–33 (1993) (entertaining an appeal, brought pursuant to HRS § 91–14, of an HRS § 91–8 declaratory order); *Fasi v. State Pub. Employment Relations Bd.,* 60 Haw. 436, 437–43, 591 P.2d, 113, 114–16 (1979) (noting that the "circuit court acquired jurisdiction [over a declaratory ruling] ... pursuant to HRS § 91–14"); *see also Sierra Club v. Hawai'i Tourism Auth.,* 100 Hawai'i 242, 264, 59 P.3d 877, 899 (2002) (explaining that HAPA "applies only to judicial review of contested case hearings, *see* HRS § 91–14, or ... a declaratory order from an agency regarding the 'applicability of any statutory provision or of any rule or order of the

agency,' HRS § 91–8"). Accordingly, we hold that orders disposing of petitions for declaratory rulings under HRS § 91–8 are appealable to the circuit court pursuant to HRS § 91–14. Consequently, the circuit court in the instant case had proper jurisdiction to review the HLRB's order.

### B. Collateral Attack and Collateral Estoppel

Although unclear, UPW appears to allege that the circuit court erred in remanding the case to the HLRB because the proceeding for declaratory ruling constituted an impermissible collateral attack and was barred by collateral estoppel.

#### 1. Collateral Attack

 A collateral attack "is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989) (citing *Kapi'olani Estate, Ltd. v. Atcherly,* 14 Haw. 651, 661 (1903)) (quotation marks omitted). As a general rule, a collateral attack may not be made upon a judgment rendered by a court of competent jurisdiction. *Id.; see also In re Genesys Data Tech., Inc.,* 95 Hawai'i 33, 40, 18 P.3d 895, 902 (2001).

 UPW appears to contend that HGEA's pursuit of a declaratory ruling and subsequent appeal of the HLRB's order refusing to issue such a ruling constitute impermissible collateral attacks on a final judgment. In the instant case, the arbitration award became a final judgment under HRS §§ 658–12 and 658–14 (1993)[10] when it was confirmed by the circuit court. However, HGEA filed its petition for intervention in the HLRB proceedings while the arbitration was still ongoing and, thus, well *before* the arbitration award was rendered or confirmed. As such, the HGEA's petition for intervention and subsequent appeal of the

HLRB's order cannot, as UPW contends, be characterized as attempts to "impeach a judgment" because there was no judgment or award to impeach at the time HGEA brought its petition.

#### 2. Collateral Estoppel

 UPW appears to argue that HGEA was collaterally estopped from seeking declaratory relief from the HLRB because HGEA was in privity with the DOT, who was a party to the arbitration proceedings. "Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a 'different claim between the same parties or their privies." *Marsland v. Int'l Soc'y for Krishna Consciousness,* 66 Haw. 119, 124, 657 P.2d 1035, 1039 (1983) (citation omitted). In order to establish a claim of collateral estoppel, the party asserting the claim has the burden of establishing that:

> (1) [T]he issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication[.]

*See Dorrance v. Lee,* 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999).

As stated above, a party asserting collateral estoppel must satisfy all four elements of the claim. Inasmuch as the fourth element is lacking in the instant case, UPW's claim is without merit. In addressing privity, this court has previously stated that "[p]reclusion is fair in circumstances where the nonparty and party had the same practical opportunity to control the course of the proceedings." *Bush v. Watson,* 81 Hawai'i 474, 480, 918 P.2d 1130, 1136 (1996) (citation omitted). "Preclusion may also be appropriate where the party in the previous action was acting in

---

**10.** HRS Chapter 658 was repealed in its entirety in connection with the enactment of the Uniform Arbitration Act, HRS Chapter 658A, 2001 Haw. Sess. Laws Act 265, § 5, at 820. Although HRS Chapter 658 was repealed, it is applicable to the

instant case because the recodified chapter became effective after the arbitration award was confirmed on May 15, 1998. 2001 Haw. Sess. Laws Act 265, § 8, at 820. ("This Act shall take effect on July 1, 2002.").

a representative capacity for the current party. However, several important rules limit the extent of preclusion by representation. The most obvious rule is that the representative must have been appointed by a valid procedure." *Id.* at 481, 918 P.2d at 1137 (citation, brackets and quotation marks omitted).

In the instant case, HGEA's participation in the arbitration proceedings was limited to the testimony of HGEA representatives who were called to testify by UPW. HGEA was not a party in the arbitration and, thus, was not allowed to call its own witnesses or cross-examine witnesses for UPW. As such, it cannot be said that HGEA had the same opportunity as the DOT to control the arbitration proceedings. In addition, although UPW argues that the DOT served as a representative of HGEA, there is no evidence in the record that HGEA appointed the DOT to represent its interests by any valid procedure. Accordingly, because HGEA was not in privity with the DOT, we hold that HGEA was not collaterally estopped from seeking a declaratory ruling from the HLRB.

C. *Mootness*

■■■■■ UPW contends that the circuit court erred in concluding that the HLRB committed an error of law in ruling that the issues presented in the petition for a declaratory ruling were rendered moot by the confirmed arbitration award. It is well-established that "[c]ourts [will] not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so." *Wong v. Bd. of Regents, Univ. of Hawai'i,* 62 Haw. 391, 395, 616 P.2d 201, 204 (1980) (citing *Territory v. Aldridge,* 35 Haw. 565, 567–68 (1940)).

■■■■ HGEA, however, contends, *inter alia,* that, even if the confirmed arbitration award rendered the petition moot, the circuit court properly remanded the case to the HLRB inasmuch as the issues presented in the petition fell within an exception to the mootness doctrine. "[W]e have repeatedly recognized an exception to the mootness doc-

trine in cases involving questions that affect the public interest and are 'capable of repetition yet evading review.'" *Okada Trucking Co. v. Bd. of Water Supply,* 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002) (citations omitted).

In the instant case, it appears that the circuit court remanded this case to the HLRB "inasmuch as the petition for declaratory ruling, as stated, indicates a recurring problem." We read the foregoing as a determination by the circuit court that the issues raised by HGEA involved questions affecting the public interest and presented a problem that was capable of repetition yet evading review. UPW fails to challenge this determination and the record contains evidence indicating that the issues presented by HGEA have arisen in past arbitrations and are likely to recur in the future. Thus, to the extent that the circuit court's ruling and the record support a determination that the issues presented to the HLRB fell within an exception to the mootness doctrine, we hold that the circuit court did not err in concluding that the HLRB committed an error of law.

IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's April 25, 2001 final judgment.

Concurring Opinion by ACOBA, J.

I believe that the circuit court of the first circuit (the court) had appellate jurisdiction to review the order of the Hawai'i Labor Relations Board (HLRB) denying the petition for a declaratory ruling by the State of Hawai'i Department of Transportation (DOT) on the bases set forth herein. Therefore, I concur.

I.

A.

Hawai'i Revised Statutes (HRS) § 91–8 (1993) authorizes interested persons to petition agencies for declaratory rulings.[1] The

---

1. HRS § 91–8 provides as follows:
 **Declaratory rulings by agencies.** Any interested person may petition an agency for a

declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules

final sentence of HRS § 91–8 provides that "[o]rders disposing of petitions in such cases *shall have the same status as other agency orders.*" (Emphasis added.) Intervenor/Appellant–Appellee Hawai'i Government Employees Association, AFSCME, Local 152, AFL–CIO (HGEA) maintains that, based upon this language, "orders disposing" of petitions for declaratory rulings "have the same status as a final order in a contested case, and thus may be appealed to the Circuit Court under HRS § 91–14(a)." [2]

"Other agency orders" is not defined in the Hawai'i Administrative Procedure Act (HAPA), HRS chapter 91.[3] However, we may look to other parts of HAPA to aid or explain the meaning of "other agency orders." HRS § 1–16 (1993) mandates that "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other." This rule "has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of the legislature, especially if they were enacted on the same day." *Kam v. Noh,* 70 Haw. 321, 326, 770 P.2d 414, 417 (1989). All of the statutes comprising HAPA, now codified as HRS chapter 91, were introduced collectively as House Bill No. 5 and signed into law on the same date, May 23, 1961, as Act 103. 1961 Haw. Sess. L. Act 103, § 21, at 91. Thus, "each part or section [of HAPA] should be construed in connection with every other part or section so as to produce a harmonious whole." *Kam,* 70 Haw. at 327, 770 P.2d at 418 (citations omitted).

The only "other agency orders" referred to in HAPA are orders "rendered by an agency in a contested case" under HRS § 91–12.[4] Thus, reading HRS § 91–8 in pari materia with HRS § 91–12, declaratory rulings have the "same status" as contested case orders. Contested case orders are subject to judicial review pursuant to HRS § 91–14. Inasmuch as declaratory orders "share the same status," they, like contested case orders, are subject to judicial review.

**B.**

Legislative history confirms this in pari materia construction of HRS § 91–8. *See State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (recognizing that this court may look to relevant legislative history to determine the purpose of a statute). In 1946, the National Conference of Commissioners on Uniform State Laws issued the Model State Administrative Procedure Act. *Model State Admin. Procedure Acts* (amended 1981), 15 U.L.A. 175–76 (Master ed.2000) The Model Act was then revised in 1961 (Revised Model Act). *Id.* at 174. HAPA was modeled after the 1959 draft of the Revised Model Act. Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 654.

As a general matter, the House Judiciary Committee identified a "basic purpose" of HAPA to be *"provid[ing] for judicial review* of agency decisions and *orders* on the record, except where the right of trial de novo, including the right of trial by jury, is provided by law." *Id.* at 655 (emphases added). The House Committee's report provides a section-by-section analysis of Bill No. 5, with

---

prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. *Orders disposing of petitions in such cases shall have the same status as other agency orders.*
(Emphasis added.)

2. HRS § 91–14 (1993) states, in relevant part, as follows:

**Judicial review of contested cases.** (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief *is entitled to judicial review thereof under this chapter;*
(Emphasis added.)

3. HRS § 91–1 (1993) defines "agency" to mean "each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." "Order" is defined as a "mandate; precept; command or direction authoritatively given[.]" *Black's Law Dictionary* 1096 (6th ed.1990).

4. HRS § 91–12 (1993) states, in part, as follows:

**Decisions and orders.** Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law.

reference to the Revised Model Act. As to the section on declaratory rulings, now codified as HRS § 91–8, the Committee stated,

> Section 8 of the Revised Model Act has been adopted with the following changes: (a) *The amendment to this section changes the style of the language to conform to Section 6 of this bill.* The language of this section does not necessarily require an agency to issue a declaratory order in every instance but is *intended to induce them to do so more frequently than they may have been doing in the past.* This section would require each agency to adopt rules governing the issuance of declaratory orders. These rules, however, could provide for the agency having some discretionary power to refuse to make a declaratory ruling. *Since the refusal in itself would be an agency order, in appropriate cases, application for judicial review on the grounds that denial was an abuse of discretion on the part of the agency may be made.*

*Id.* at 658–59 (emphases added). This report is instructive in three respects.[5]

First, the legislature expressly adopted Section 8 of the Revised Model Act and apparently made only stylistic changes in order "to conform to Section 6." To reiterate, HRS § 91–8, entitled "Declaratory rulings by agencies," provides that

> *[a]ny interested person may petition an agency* for a declaratory *order* as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. *Orders disposing of*

*petitions in such cases shall have the same status as other agency orders.*

(Emphases added.) Section 8 of the Revised Model Act stated that

> *[e]ach agency shall provide by rule for the filing and prompt disposition of petitions* for declaratory *rulings* as to the applicability of any statutory provision or of any rule or order of the agency. *Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.*

*Model State Admin Procedures Acts,* 15 U.L.A. at 267 (emphases added.)

Section 8 of the Revised Model Act did not contain language found in Section 6 to the effect that "any interested person may petition an agency" for declaratory rulings.[6] Thus, it appears that the legislature's changes to the Revised Model Act in this respect was to make clear that "any interested person" can petition for (1) the adoption, amendment, or repeal of a rule under HRS § 91–6 and (2) a declaratory ruling pursuant to HRS § 91–8. Such petitions would be for declaratory "orders." Additionally, the final sentence in HRS § 91–8 states that *"[o]rders* disposing of petitions in such cases shall have the same status *as other agency orders."* (Emphases added.) The last sentence of Revised Model Act Section 8 is substantially similar, providing that *"[r]ulings* disposing of petitions have the same status *as agency decisions or orders in contested cases."* (Emphases added.)

The legislature's statement that Section 8 of the Revised Model Act had been adopted confirms that use of the term "orders"[7] rather than "rulings" or the use of the phrase "other agency orders" rather than "agency decisions or orders in contested cases" did

---

5. According to the conference committee reports, both houses were "in accord with the intent and purpose of House Bill No. 5." Conf. Com. Rep. No. 9, in 1961 House Journal, at 1058; Conf. Com. Rep. No. 10, in 1961 Senate Journal, at 1047.

6. Section 6 of Bill No. 5, now codified as HRS § 91–6, states:
 § **91–6 Petition for adoption, amendment or repeal of rules.** *Any interested person may petition an agency* requesting the adoption, amendment, or repeal of any rule stating reasons therefor. Each agency shall adopt rules

prescribing the form for the petitions and the procedure for their submission, consideration, and disposition. Upon submission of the petition, the agency shall within thirty days either deny the petition in writing, stating its reasons for the denial or initiate proceedings in accordance with section 91–3.

7. The drafters of the Revised Model Act believed the declaratory ruling procedure applied to "orders as well as rules." Frank E. Cooper, *State Administrative Law* 242 (1965) (internal quotation marks omitted).

not constitute a substantive change. As stated previously, in HAPA, the only "other agency orders" are orders resolving contested cases. Hence the reference to "other agency orders" in HRS § 91–8 is the equivalent of the Revised Model's Section 8 "agency decisions or orders in contested cases." The legislature expressly stated that it was adopting the Revised Model Act Section 8 with stylistic amendments and, hence, any differences between these two sentences was not viewed as substantive.

Second, the House report instructs that HRS § 91–8 was adopted to "induce" agencies to issue declaratory orders "more frequently than they may have been doing in the past." This legislative intent coincides with the intent of the drafters of the Revised Model Act who were "determined to make it more difficult for agencies to decline to issue declaratory rulings." Frank E. Cooper, *State Administrative Law* 242 (1965).

The final sentence of the House report, that "[s]ince the refusal in itself would be an agency order, in appropriate cases, application for judicial review on the grounds that denial was an abuse of discretion on the part of the agency may be made," Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 659, also confirms that judicial review was contemplated for declaratory ruling orders, denial of a declaratory ruling application also being considered an agency order. *See* discussion *infra*. Thus, the in pari materia construction of HRS § 91–8—that courts may review declaratory rulings—is in consonance with legislative intent.

### C.

While not expressly setting forth a construction of HRS § 91–8, as discussed above, prior cases of this court have consistently recognized that the circuit courts have jurisdiction to review HRS § 91–8 declaratory rulings[8] ostensibly by way of the procedure in HRS § 91–14. *See e.g., Vail v. Employees' Ret. Sys.*, 75 Haw. 42, 49–51, 856 P.2d 1227, 1232–33 (1993) (disposing of an appeal,

brought pursuant to HRS § 91–14, of a HRS § 91–8 declaratory order); *Fasi v. State Pub. Employment Relations Bd.*, 60 Haw. 436, 441, 591 P.2d 113, 116 (1979) (concluding that the "circuit court acquired jurisdiction [over a declaratory ruling] as the result of institution ..., pursuant to HRS § 91–14, of proceedings for review of the Board's decision"); *Kim v. Employees' Ret. Sys.*, 89 Hawai'i 70, 71, 968 P.2d 1081, 1082 (App.1998) (disposing of an appeal of a declaratory order concerning recalculation and increase of retirement benefits). *See also Sierra Club v. Hawai'i Tourism Auth.*, 100 Hawai'i 242, 264, 59 P.3d 877 (2002) (explaining that HAPA "applies only to judicial review of contested case hearings, *see* HRS § 91–14, or ... *a declaratory order* from an agency regarding 'the applicability of any statutory provision or of any rule or order of the agency,' HRS § 91–8" (emphasis added)).

### II.

UPW distinguishes an agency order "refusing" to issue a declaratory ruling from an order issuing a declaratory ruling. However, as stated previously, HRS § 91–8 provides that "[o]rders *disposing* of petitions in such cases shall have the same status as other agency orders." (Emphasis added.) To "dispose of" is to "exercise finally, in any manner, one's power of control over; to pass into the control of someone else; to alienate, relinquish, part with, or get rid of; to put out of the way; to finish with; to bargain away." *Black's Law Dictionary* at 471.

Orders refusing to issue a declaratory ruling would fall within the definition of actions "disposing" of petitions. *See Human Rights Party v. Michigan Corr. Comm'n*, 76 Mich. App. 204, 256 N.W.2d 439, 442 (1977) (holding that "a *refusal* to issue a declaratory ruling ... is subject to judicial review as an agency final decision or order in a contested case" (emphasis added)); Cooper, *supra*, at 243 (observing that because "a ruling *declining* to rule upon a particular question ... would have the same status as *any other*

---

**8.** Intervenor/Appellee–Appellant United Public Workers, AFSCME, Local 646, AFL–CIO (UPW) concedes that "where the labor board actually issues a declaratory ruling on the merits affecting the rights[,] duties[,] and privileges of the specific parties[,] judicial review is afforded by the court." As discussed, however, judicial review of declaratory rulings is statutorily mandated.

*final order* of the agency[,] ... in appropriate cases, *the refusal of the agency to make a ruling could be appealed to the courts* " (emphases added)). HLRB's order represented the final exercise of its "power of control over" DOT's petition. Thus, the order of "refusal" was an order of the HLRB "disposing" of the petition. It follows, then, that like "other agency orders," orders that "exercise finally, in any manner," the agency's "power of control over" a petition for declaratory ruling are subject to judicial review.

Again, legislative history confirms the interpretation of HRS § 91–8 as vesting the court with jurisdiction over HLRB's order. As was mentioned previously, the House Judiciary Committee acknowledged that *"refusal* [to make a declaratory ruling] would be an agency order" and therefore "in appropriate cases, application for judicial review ... may be made." Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 659 (emphasis added). Thus, the legislature contemplated that an agency may refuse to issue a declaratory ruling, that such a refusal constituted "an agency order," and, hence, like "other agency orders," such action was subject to judicial review.

### III.

Without reaching the merits of the appeal, the facts indicate the adverse effects of the HLRB's ruling. HGEA is the certified exclusive representative of employees with respect to job positions in Bargaining Unit 2 (BU–02). HGEA's collective bargaining agreement "requires that temporarily vacant BU–02 job positions should be filled by BU–02 employees via a temporary transfer or assignment." UPW, on the other hand, is the certified exclusive representative of employees and job positions in Bargaining Unit 1 (BU–01). In apparent conflict with HGEA's agreement, UPW's collective bargaining agreement "requires that temporarily vacant BU–02 positions should be filled by BU–01 employees via a temporary promotion."

The underlying dispute in this case arose when DOT filled a temporarily vacant BU–02 job position with a BU–02 employee. UPW filed a grievance against DOT on behalf of William Kapuwai, a BU–01 employee. On October 8, 1996, UPW gave notice of its intent to arbitrate the grievance. While the arbitration was still in progress, on October 20, 1997, DOT filed its petition for declaratory ruling with the HLRB. The HLRB subsequently permitted UPW, HGEA, and all of the employer-counties of Hawai'i to intervene in the petition for declaratory ruling.[9]

On May 11, 1998, the arbitrator issued his final written decision and award in favor of Kapuwai, thus placing a BU–01 employee in a BU–02 job position. On May 15, 1998, UPW filed a motion in the circuit court[10] to confirm the arbitration award. The motion to confirm was granted on July 21, 1998.[11] Some two years later, on June 7, 2000, the HLRB dismissed DOT's petition for declaratory ruling on the ground that the Kapuwai arbitration rendered the case moot.

By declaring the petition moot, the HLRB left unsettled the issue of how temporary BU–02 job positions should be filled. On appeal to the circuit court, the court agreed with HGEA that the case was *not* moot. In its April 11, 2001 order remanding the case to the HLRB, the court concluded that the HLRB "committed an error of law when it determined that the case had lost its character as a present live controversy inasmuch as the petition for declaratory ruling, as stated, indicates *a recurring problem.*" (Emphasis added.)

According to HGEA, the two collective bargaining agreements have apparently resulted in conflicting arbitration awards, a conflict which will likely continue to evade judicial review via individual arbitration awards. The HLRB had granted HGEA's and other appellants' requests to intervene in DOT's petition. But the HLRB dismissed DOT's petition on mootness grounds almost two years after the arbitration award was

**9.** On November 14, 1997, DOT also filed a prohibited practice complaint against UPW, alleging that UPW's position in the Kapuwai grievance was contrary to HRS § 89–9(d). DOT requested that the HLRB stay proceedings before the arbitrator.

**10.** The Honorable Kevin Chang presided.

**11.** In its brief, HGEA cites to other arbitration decisions that conflict with the Kapuwai arbitration decision.

confirmed. In supporting the court's decision, HGEA argues that an exception to the mootness doctrine applies. It contends that pursuant to *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987), a case should not be dismissed as moot if "the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made." Under these circumstances, whether the HLRB's ruling comes within an exception to the mootness doctrine presents a question susceptible to judicial review pursuant to HRS § 91–8.

### IV.

Based on the foregoing, I believe that HAPA provides for judicial review of declaratory ruling orders, including what may be characterized as a "refusal" to issue a declaratory ruling. In my view, because the court had jurisdiction to review HLRB's order denying DOT's petition, and the question presented plainly affects the public interest and is susceptible of arising again in the future without being resolved by appellate review, the court's remand to the HLRB was correct.