**<u>NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>**

<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000865
29-NOV-2023
08:11 AM
Dkt. 99 MO**</span>

NOS. CAAP-19-0000865 AND CAAP-22-0000408

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

**<u>CAAP-19-0000865</u>**

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS
TRUSTEE (CWALT 2006-32CB), Plaintiff-Appellee,
v.
DENNIS DUANE DESHAW AND SUSAN KAY BROER-DESHAW,
Defendants-Appellants,
and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, SOLELY AS NOMINEE
FOR FIRST MAGNUS FINANCIAL CORPORATION, VILLAGE PARK COMMUNITY
ASSOCIATION, Defendants-Appellees,
and
DOES 1 THROUGH 20, INCLUSIVE, Defendants.
(CIVIL NO. 1CC161001821)

AND

**<u>CAAP-22-0000408</u>**

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE
(CWALT 2006-32CB), Plaintiff-Appellee,
v.
DENNIS DUANE DESHAW AND SUSAN KAY BROER-DESHAW,
Defendants-Appellants,
and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, SOLELY AS NOMINEE
FOR FIRST MAGNUS FINANCIAL CORPORATION; VILLAGE PARK COMMUNITY
ASSOCIATION; AND DOES 1 THROUGH 20, INCLUSIVE,
Defendants-Appellees,
and

SUSAN KAY BROER-DESHAW, Counterclaim Plaintiff-Appellant,
v.
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE
(CWALT 2006-32CB), Counterclaim Defendant-Appellee.
(CIVIL NO. 1CC161001821)


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT


MEMORANDUM OPINION
(By:  Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

In this consolidated appeal,[1] Defendants-Appellants Dennis Duane DeShaw (**DeShaw**) and Susan Kay Broer-DeShaw (**Broer-DeShaw**) (collectively, **DeShaws**) appeal in CAAP-19-0000865 (**Foreclosure Appeal**)[2] from the:  (1) December 11, 2019 "Findings of Fact and Conclusions of Law [(**FOFs/COLs**)]; Order Granting Plaintiff's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure filed November 14, 2018" (**Foreclosure Decree**), and (2) December 11, 2019 Judgment (**Foreclosure Judgment**); and appeal in CAAP-22-0000408 (**Fees Appeal**) from the May 23, 2022 "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Attorney's Fees and Costs and Additional Amounts Owed" (**Fees Order**).  The

---

[1]     We consolidated CAAP-19-0000865 and CAAP-22-0000408 by an Order of Consolidation filed on March 28, 2023.

[2]     Although it appears that the Notice of Appeal and Reply Brief were submitted by both DeShaw and Broer-DeShaw, only Broer-DeShaw submitted the Opening Brief and Supplemental Brief in the Foreclosure Appeal and opposed the Foreclosure Decree below.  To the extent DeShaw raises any arguments in the Foreclosure Appeal, they are waived.  See Williams v. Aona, 121 Hawaiʻi 1, 8, 210 P.3d 501, 508 (2009) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003)));  In re Hawaiian Flour Mills, Inc., 76 Hawaiʻi 1, 14 n.5, 868 P.2d 419, 432 n.5 (1994) (holding that arguments raised for the first time in the reply brief on appeal were deemed waived).  We thus refer to Broer-DeShaw only in our discussion of the Foreclosure Appeal.  Broer-DeShaw was self-represented up until briefing was completed in 2020, and thereafter retained counsel, who appeared in the Foreclosure Appeal on November 23, 2021 and filed the March 29, 2022 Supplemental Brief.

2

Foreclosure Decree, Foreclosure Judgment, and the Fees Order, were all filed and entered by the Circuit Court of the First Circuit (**Circuit Court**).[3]

In the Foreclosure Appeal, Broer-DeShaw raises the following nine points of error (**POEs**)[4] regarding the Foreclosure Decree:

> [1]. The Trial Court has a Duty to Explain its Findings.
>
> [2]. The Trial Court Erred in Finding that [Plaintiff-Appellee The Bank of New York Mellon FKA The Bank of New York, as Trustee (CWALT 2006-32CB) (**BONYM**)] Owned the Note at Any Time, because [BONYM] Does Not Exist.
>
> [3]. The Trial Court Erred in Finding that [BONYM] Owned the Note at Any Time, because the Endorsements on the Note Convey Nothing to [BONYM].
>
> [4]. The Trial Court Erred in Finding that [BONYM] Owned the Note at Any Time, because the First Purported "Assignment" Conveys Nothing to [BONYM].
>
> [5]. The Trial Court Erred in Finding that [BONYM] Owned the Note at Any Time, because the Second Purported "Assignment" Conveys Nothing to [BONYM].
>
> [6]. The Trial Court Erred in Finding that [BONYM] Owned the Note at Any Time, because [BONYM] Paid Nothing for the Note.
>
> [7]. The Trial Court Erred in Concluding that a Plaintiff that Pays Nothing for a Loan in [sic] Entitled to Take the Collateral that Secures the Loan.
>
> [8]. There is No Evidence that the Notice of Default Actually was Mailed to [Brower-DeShaw].

---

[3]    The Honorable Jeannette H. Castagnetti entered the Foreclosure Decree and Foreclosure Judgment in the Foreclosure Appeal.  The Honorable Dean E. Ochiai entered the Fees Order in the Fees Appeal.

[4]    Broer-DeShaw's POEs do not comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) in multiple respects.  We have numbered Broer-DeShaws' POEs per the rule, and we have also consolidated and reorganized them for clarity in our discussion infra.  While the POEs do not contain "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency[,]" HRAP Rule 28(b)(4)(iii), we address them to the extent the contentions can be discerned.  See Erum v. Llego, 147 Hawai'i 368, 380-81, 465 P.3d 815, 827-28 (2020) (affording liberal review to pleadings by self-represented parties to promote access to justice).

[9]. The Circuit Court's Judgment Amount is Based on Evidence that it Held to be Inadmissible.

In the Fees Appeal,[5] the DeShaws contend that the Circuit Court lacked jurisdiction to enter the Fees Order, which awarded fees and additional amounts to BONYM after a notice of appeal had been filed from the April 12, 2022 order and judgment confirming the sale of the property in CAAP-22-0000266 (**Confirmation Appeal**).

We hold in the Foreclosure Appeal that Broer-DeShaw's challenges to the Foreclosure Decree are not moot under the collateral consequences exception despite the sale of the property; but the challenges are nevertheless without merit.  We hold in the Fees Appeal that the Circuit Court retained jurisdiction to enter the Fees Order even after the Confirmation Appeal was filed, where the Fees Order determined the final amounts owed to BONYM incidental to the enforcement of the Foreclosure Decree and distributed the proceeds of the sale.  We thus affirm.

## I.    BACKGROUND

On September 27, 2016, BONYM filed a Verified Complaint to Foreclose Mortgage (**Complaint**), alleging that the DeShaws defaulted on a promissory note (**Note**) secured by a mortgage (**Mortgage**) on real property on Kaʻaholo Street, Waipahu, Hawaiʻi 96797 (**Subject Property**).

On May 9, 2018, Broer-DeShaw filed an Answer and Counterclaim (**Counterclaim**) alleging wrongful foreclosure,

---

[5]     The Opening Brief submitted in the Fees Appeal was filed by counsel on behalf of both the DeShaws.  Although the DeShaws did not challenge the Fees Order below, we address their sole argument challenging the Circuit Court's jurisdiction.  See Bank of N.Y. Mellon v. Comito, 136 Hawaiʻi 532, 534, 364 P.3d 240, 242 (App. 2015) ("Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action." (quoting Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005)).

4

declaratory judgment, quiet title, and damages for unfair and deceptive trade practices.[6]

On November 14, 2018, BONYM filed a "Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (**Renewed MSJ**).[7]  Attached was a declaration by Brian Nwabara (**Nwabara**) as an "employe[e]" and "custodian" of Bayview Loan Servicing, LLC (**Bayview**), "the authorized loan servicing agent for BONYM"; and a declaration by BONYM's counsel, declaring that BONYM was in possession of the Note at the time the foreclosure action was commenced.  Also attached were a copy of the Note, an acknowledgement document reflecting that BONYM's counsel received possession of the Note on September 16, 2016, a June 4, 2015 Notice of Default letter mailed to the DeShaws at the Subject Property address, copies of the records that Nwabara relied on and the account and payment history of the loan, a copy of the Mortgage, and a copy of a 2011 "Assignment of Mortgage" (**First Assignment**) and 2015 "Assignment of Mortgage" (**Second Assignment**).

On March 27, 2019, Broer-DeShaw filed a "Response in Opposition to [BONYM]'s Renewed [MSJ]" (**Opposition**), arguing, among other things, that BONYM "may not exist"; Nwabara's declaration was "hearsay under *U.S. Bank v. Mattos*"; the endorsement on the Note did not "convey anything to" BONYM;

---

[6]     To date, the Counterclaim has not been adjudicated by the Circuit Court.  The Counterclaim was referenced in the background of the DeShaws' Amended Opening Brief in CAAP-19-0000865, but no argument was made regarding it.  Both parties do address the Counterclaim in their responses filed on August 10, 2023, pursuant to this court's July 11, 2023 order directing the parties to address why the Foreclosure Appeal should not be dismissed for mootness due to sale of the Subject Property to a bona fide purchaser.  The Counterclaim is discussed infra.

[7]     BONYM's first motion for summary judgment filed December 29, 2017, was denied without prejudice following a March 14, 2018 hearing.  The Circuit Court denied the motion because, among other things, the declaration discussed a "prior unidentified servicer on the mortgage as containing records relied upon by" BONYM, and due to "procedural problems."

there was "no evidence that the Notice of Default was mailed" to the DeShaws; the First Assignment was from "a party with no interest in the Note," was a "legal nullity," and "forged"; "a Note cannot be conveyed in a separate document"; the Second Assignment did not "convey the Note"; and there was "no evidence of payment" for the Note.

On March 29, 2019, BONYM filed a "Reply in Support of its Renewed [MSJ]" (**Reply**). Attached to the Reply were declarations by BONYM's counsel of record, Aldridge Pite, LLP, and Aldridge Pite, LLP's Compliance Manager, Valerie Lacava (**Lacava**), declaring that Aldrige Pite, LLP received the Note on September 16, 2016.

On April 3, 2019, a hearing on the Renewed MSJ was held.[8]

On December 11, 2019, the Circuit Court granted the Renewed MSJ and filed its Foreclosure Decree and Foreclosure Judgment. The Foreclosure Decree determined the amount due and owing to BONYM from the DeShaws as of July 8, 2018;[9] and pertinent to the Fees Appeal, the decree awarded per diem interest on the Note "from and after July 8, 2018", along with other fees, expenses and amounts that the Circuit Court "shall subsequently determine[.]"[10] On December 21, 2019, Broer-DeShaw

---

[8] The transcript of the April 3, 2019 hearing on the Renewed MSJ is not in the record on appeal.

[9] The July 8, 2018 date comes from Nwabara's Declaration and the exhibits attached in support of BONYM's Renewed MSJ, calculating the amount due and owing as of July 8, 2018.

[10] The Foreclosure Decree stated:

**CONCLUSIONS OF LAW**

. . . .

4. There is due and owing to [BONYM] from DESHAWS the sum of $609,002.91 as of July 8, 2018, plus interest at $73.18 per day from and after July 8, 2018, plus late fees, and any further advances made by [BONYM] for property

6

timely filed the Foreclosure Appeal.[11]

On January 26, 2022, BONYM filed a "Renewed Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectments" (**Renewed Motion for Confirmation of Sale**), which the Circuit Court orally granted at a March 4, 2022 hearing.

On March 17, 2022, BONYM filed a "Motion for Attorney's Fees and Costs and Additional Amounts Owed" (**Motion for Fees**), requesting an additional $201,345.73 for "legal fees and costs and additional amounts owed" on the Note and Mortgage. The DeShaws did not file an opposition.

---

> expenses (real property taxes, fire and/or mortgage insurance premiums, etc.), together with other amounts <u>as the Court shall subsequently determine</u> to be lawfully chargeable under the provisions of the Note and Mortgage held by [BONYM], including interest, costs, expenses, late fees, other charges and attorneys' fees as the Court shall determine.
>
> . . . .
>
> **WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**
>
> . . . .
>
> 5. . . . <u>The Court reserves jurisdiction to determine the party or parties to whom any surplus shall be awarded. The Court shall determine</u> the amount of the fee of the Commissioner and <u>the amount of the attorneys' fees and costs of [BONYM] and shall direct the final payment of the proceeds of the foreclosure sale</u>. Upon distribution of the sale proceeds according to the directions of the Court, the Commissioner shall file an accurate accounting of receipts, expenses and distributions. <u>If the proceeds of such sale are insufficient to pay the aforesaid amounts to [BONYM], the Court shall/may direct that a joint and several judgment for such deficiency be entered</u> in favor of [BONYM] and against the DESHAWS.

(Emphases added.)

---

[11]  Hawaii Revised Statutes (**HRS**) § 667-51 (2016), governing appeals in foreclosure cases, provides in subsection (a)(1) that a judgment entered on a decree of foreclosure is final and appealable.

On April 12, 2022, the Circuit Court filed its "Order Approving Commissioner's Report and Granting [BONYM]'s Renewed Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectments, Filed January 26, 2022" (**Confirmation Order**).  The Confirmation Order named Zhuping Ye (**Ye**) as the purchaser of the Subject Property, and pertinent to the Fees Appeal, the Confirmation Order "reserve[d] jurisdiction" for "any determination of any additional amounts due and owing to [BONYM], including attorney's fees/costs."[12]

---

[12]     The Confirmation Order contained the following orders:

1. In accordance with the Decree of Foreclosure, the sale of the Mortgaged Property to Zhuping Ye or his nominee, at a bid price of $851,000.00, be and is hereby ratified, approved and confirmed and that upon receipt of the fees and costs due to him, said Commissioner is hereby ordered and directed to make a conveyance thereof to Zhuping Ye or his nominee and to pay to [BONYM] all proceeds from the sale of the Mortgaged Property to satisfy all of amounts due and owing to [BONYM] after payment of outstanding Commissioner's fees and costs.

. . . .

11. Closing of the sale to Zhuping Ye or his nominee shall occur within thirty-five (35) days from the date of entry of this Order.

. . . .

14. The Court reserves jurisdiction to enter such further orders as may be necessary or appropriate to assist Zhuping Ye or their nominee, to gain possession of the Mortgaged Property or any determination of any additional amounts due and owing to [BONYM], including attorney's fees/costs.

. . . .

(Emphases added.)

8

Also on April 12, 2022, the Circuit Court entered Judgment on the Confirmation Order (**Confirmation Judgment**) pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b).[13]

Also on April 12, 2022, the DeShaws filed an appeal from the Confirmation Order and Confirmation Judgment, generating the Confirmation Appeal.[14]

On April 13, 2022, the day after the Confirmation Appeal had been filed, the Circuit Court heard BONYM's Motion for Fees, and orally granted the motion.

On May 23, 2022, while the Foreclosure Appeal and Confirmation Appeal were pending, the Circuit Court filed the Fees Order. The Fees Order awarded $201,345.73, consisting of, among other things, attorney's fees, costs, and additional interest on the Note from "July 8, 2018, through March 16, 2022,"[15] in addition to the $609,002.91 previously awarded to BONYM from the sale proceeds.

On June 22, 2022, the DeShaws appealed from the Fees Order, generating the Fees Appeal.

On October 21, 2022, BONYM filed a motion to dismiss the Confirmation Appeal, CAAP-22-0000266, arguing that the issues raised by the DeShaws in the appeal were moot because the Subject Property had been sold to Ye, a third-party good-faith purchaser who was not a party to the action. The motion

---

[13]    HRCP Rule 54(b) provides that a court may enter a final judgment as to fewer than all claims, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

[14]    HRS § 667-51(a)(2) provides that a judgment certified under HRCP Rule 54(b) entered on an order confirming sale is final and appealable.

[15]    The March 16, 2022 date is as of the time the Motion for Fees was filed on March 17, 2022.

attached a recorded quitclaim deed reflecting the new owner of the Subject Property. The DeShaws opposed the motion.

Also on October 21, 2022, BONYM filed a motion to dismiss the Fees Appeal in CAAP-22-0000408, raising the same argument that the appeal was moot due to the sale of the Subject Property to a third-party good-faith purchaser; and because the DeShaws had not opposed the Fees Order below. The DeShaws opposed the motion.

On November 4, 2022, this court granted dismissal of the Confirmation Appeal for lack of appellate jurisdiction because the Subject Property had been "sold to a bona fide purchaser";[16] and denied dismissal of the Fees Appeal because we did not lack jurisdiction over the Fees Appeal based on mootness.[17]

On July 11, 2023, we issued an Order to Show Cause as to why the Foreclosure Appeal should not be dismissed for lack of appellate jurisdiction due to mootness, based on the dismissal of the Confirmation Appeal. The parties filed responses on August 10, 2023. Broer-DeShaw, now represented by counsel, argued that dismissal of the Foreclosure Appeal "will have an undue preclusive effect upon the DeShaws' pending claims in their wrongful foreclosure counterclaim, barring their ability to recover damages despite being victims of a wrongful mortgage foreclosure resulting in the unlawful loss of their home." Broer-DeShaw cited Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 264, 428 P.3d 761, 776 (2018), which held that

---

[16]    This court relied on, *inter alia*, Bank of New York Mellon v. R. Onaga, Inc., 140 Hawaiʻi 358, 370, 400 P.3d 559, 570 (2017) ("If a stay is not obtained and the property is sold to a bona fide purchaser, the appeal should be dismissed as moot because no effective relief can be granted.").

[17]    The DeShaws did not seek certiorari review of the dismissal of the Confirmation Appeal.

10

Hawai'i law permitted a mortgagor to maintain a cause of action for wrongful foreclosure based on the underlying facts of the foreclosure case; and argued that "'a mortgagor should be able to assert a counterclaim'" on those facts, but this did "'not mean a mortgagor must assert the wrongful foreclosure claim as a compulsory counterclaim.'" Broer-DeShaw asserted that the Counterclaim was "based upon the exact same live controversy that is at issue in this appeal." Broer-DeShaw urged that "[e]ven if title cannot be recovered, under the counterclaim the issue of damages remains[,]" and that the Foreclosure Appeal is "not moot because effective relief can be afforded in the form of damages."

BONYM argued that the Foreclosure Appeal is moot for the same reasons this court dismissed the Confirmation Appeal.[18] With regard to the Counterclaim, BONYM argued that the Counterclaim was not the subject of any of the three appeals (Foreclosure Appeal, Confirmation Appeal, Fees Appeal); the Counterclaim had "not been directly adjudicated by the Circuit Court"; and no order or judgment had been entered on the Counterclaim. BONYM, however, expressly acknowledged that by entering the Foreclosure Decree, "the Circuit Court did indirectly find that [DeShaws'] Counterclaim lacks merit" by "finding that BONYM had a valid Mortgage encumbering the Property and [BONYM] was entitled to foreclose on the same."

## II.  STANDARDS OF REVIEW

### A. Mootness

"It is axiomatic that mootness is an issue of subject matter jurisdiction. 'Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo*.'"

---

[18]     In its response, BONYM attached and incorporated its previous argument from the October 21, 2022 motion to dismiss the Confirmation Order Appeal, CAAP-22-0000266, which this court granted on November 4, 2022.

Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 4-5, 193 P.3d 839, 842-43 (2008) (quoting Kaho'ohanohano v. Dep't of Human Serv., 117 Hawai'i 262, 281, 178 P.3d 538, 557 (2008)).

### B. Motion for Summary Judgment

On appeal, "[a] trial court's decision on a motion for summary judgment is reviewed de novo." Wells Fargo Bank, N.A. v. Fong, 149 Hawai'i 249, 253, 488 P.3d 1228, 1232 (2021) (citation omitted).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.
>
> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law.

Id. (quoting French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004); Fujimoto v. Au, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001)).

### C. Jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action . . . . A judgment rendered by a circuit court without subject matter jurisdiction is void." Bank of N.Y. Mellon v. Comito, 136 Hawai'i 532, 534, 364 P.3d 240, 242 (App. 2015) (quoting Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005)).

## III. DISCUSSION

### A. While the Foreclosure Appeal is moot as to the relief requested, Broer-DeShaw's challenges to the Foreclosure Decree are intertwined with the unresolved Counterclaim, and are not moot.

Under Hawai'i law, mootness is an issue of justiciability. State v. Hewitt, 153 Hawai'i 33, 42, 526 P.3d 558, 567 (2023). A case is moot "where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised." Lethem, 119 Hawai'i at 5, 193 P.3d at 843 (quoting Lathrop v. Sakatani, 111 Hawai'i 307, 312-13, 141 P.3d 480, 485-86 (2006)). "[A] 'case is moot if the reviewing court can no longer grant effective relief.'" Cmty. Ass'ns of Hualalai, Inc. v. Leeward Plan. Comm'n, 150 Hawai'i 241, 253, 500 P.3d 426, 438 (2021) (quoting In re Marn Family, 141 Hawai'i 1, 7, 403 P.3d 621, 627 (2016)).

Here, the relief Broer-Deshaw requests in the Amended Opening Brief is for this court to "reverse" the Circuit Court's grant of summary judgment and the Foreclosure Decree, and "remand the matter" back to the Circuit Court for a "fair trial." Broer-DeShaw argues that "then the true owner of the Note and the [M]ortgage probably would be compelled to reveal itself, and [Broer-DeShaw] could apply to that entity for a modification and reinstatement of her loan." Broer-Deshaw, however, did not obtain a stay of the proceeding by posting a bond, and the Subject Property has been sold to a bona fide purchaser. See Onaga, 140 Hawai'i at 368-69, 400 P.3d at 569-70 (holding that because the property was sold to a bona fide purchaser and appellant did not post a bond to stay the

13

proceedings, the appeal requesting relief of "a decision on the merits of the foreclosure decree, as well as new foreclosure proceedings" was moot). Thus, Broer-DeShaw's appeal of the merits of the Foreclosure Decree and Judgment would ordinarily be moot. See id.; Cmty. Ass'ns of Hualalai, Inc., 150 Hawaiʻi at 253, 500 P.3d at 438.

We do not dismiss the Foreclosure Appeal, however, because of the possible prejudicial effect of such dismissal on the unresolved Counterclaim, pursuant to the collateral consequences exception to the mootness doctrine. See McCabe Hamilton & Renny Co., Ltd. v. Chung, 98 Hawaiʻi 107, 121, 43 P.3d 244, 258 (App. 2002) (recognizing that "the imposition of issue preclusion where appellate review has been frustrated due to mootness is obviously unfair" and vacating the subject orders, "which are 'unreviewable because of mootness, from spawning any legal consequences'" (quoting Aircall of Haw., Inc. v. Home Properties, Inc., 6 Haw. App. 593, 595-96, 733 P.2d 1231, 1232-33 (1987))); Lethem, 119 Hawaiʻi at 11, 193 P.3d at 849 (adopting the collateral consequences exception to the mootness doctrine, and concluding that the reputational harm to a father's appeal of an expired temporary restraining order based on allegations of abuse of his daughter, fell within the collateral consequence exception to the mootness doctrine).

Here, the parties do not dispute that the allegations in the Counterclaim are intertwined with the FOFs/COLs in the Foreclosure Decree. Broer-DeShaw argued, and BONYM acknowledged, that the Foreclosure Decree contained findings regarding the validity of the mortgage and BONYM's entitlement to foreclose, which would impact the same issues raised in the Counterclaim. If the Foreclosure Decree was unreviewable on appeal due to mootness, there is a reasonable possibility that

the Decree would "spawn[] . . . legal consequences" on the same issues in the unresolved, pending Counterclaim. See McCabe, 98 Hawaiʻi at 121, 43 P.3d at 258. "To invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur." Lethem, 119 Hawaiʻi at 8, 193 P.3 at 846 (emphases omitted) (quoting Putman v. Kennedy, 900 A.2d 1256, 1261-62 (Conn. 2006)). We conclude that this standard has been met here, and we thus review the appeal of the Foreclosure Decree on the merits, under the collateral consequences exception.

**B. In the Foreclosure Appeal, Broer-DeShaw's challenges to the Foreclosure Decree are without merit.**

**1. The contention in POE 1 that the Circuit Court failed to "explain its findings" is without merit.**

Broer-DeShaw argues that the Foreclosure Decree did not address any of Broer-DeShaw's arguments, and that the Circuit Court "just signed whatever proposed order [BONYM] submitted to it[.]" The Circuit Court was not required to make findings of fact and conclusions of law in disposing of the Renewed MSJ. See HRCP Rule 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 . . . ."). Nevertheless, the Foreclosure Decree contains FOFs/COLs supporting the Circuit Court's grant of the MSJ, none of which are specifically challenged by Broer-DeShaw. This argument is without merit.

### 2. Broer-DeShaw's contention in POE 2 that BONYM did not "own[] the Note" because BONYM "does not exist" is without merit.

Broer-DeShaw argues that BONYM does not own the Note because BONYM is "fictional." In support of this contention, Broer-DeShaw points to an unauthenticated exhibit attached to Broer-DeShaw's declaration to the opposition to the Renewed MSJ below. Broer-DeShaw declared that the exhibit was a printout from the Securities and Exchange Commission, reflecting search results for what Broer-DeShaw claimed was a "list of all 34 registered MBS trusts whose names begin with 'CWALT[,]'" with none being BONYM.[19] The exhibit contained no seal or certification, and lacked the authentication required for public records admissibility. See Hawaii Rules of Evidence (**HRE**) Rules 901[20] and 902.[21] Broer-DeShaw's argument that BONYM "seems not to exist clearly raises a genuine issue of material fact" was not

---

[19] Broer-DeShaw also claims that "[a]t the hearing on the [MSJ], the Circuits [sic] Court ordered . . . counsel for [BONYM], 'to correct the case caption.'" The record on appeal does not contain the transcripts of the March 14, 2018 or April 3, 2019 hearings on the MSJ or Renewed MSJ, and we do not address this claim. See HRAP Rule 10(1)(A) ("When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court appealed from, the appellant shall file . . . within 10 days after filing the notice of appeal, a request or requests to prepare a reporter's transcript."); Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record, and he or she has the responsibility of providing an adequate transcript." (brackets omitted) (quoting Union Bldg. Materials Corp. v. The Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984))).

[20] HRE Rule 901, entitled "Requirement of authentication or identification," states that "authentication or identification" is a "condition precedent to admissibility," which can be satisfied by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

[21] HRE Rule 902, entitled "Self-authentication," states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to" "[a] document bearing a seal purporting to be that of . . . [an] agency thereof, and a signature purporting to be an attestation or execution."

supported by admissible evidence under HRCP Rule 56(e). See HRCP Rule 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The Circuit Court stated in its FOFs/COLs in the Foreclosure Decree that BONYM "is, and at all times relevant was, a New York company, authorized to do business in the State of Hawaii." Broer-DeShaw has not pointed to admissible evidence in the record creating a genuine factual dispute regarding BONYM's existence, and this contention is without merit.

### 3. POEs 3, 6, and 7 challenging the indorsements on the Note and that BONYM "paid nothing" for the Note, lack merit.

Broer-DeShaw contends that because the Note's three endorsements are "undated," "none of them conveys [sic] anything to [BONYM]"; BONYM's name is not on the Note; the "chain of title . . . convey[ed] nothing to [BONYM]"; BONYM "paid nothing for the Note"; and the Circuit Court "erred in concluding that a plaintiff that pays nothing for a loan is entitled to take the collateral that secures the loan."[22] We construe these arguments as a challenge to BONYM's standing to enforce the Note.

To establish standing to bring a foreclosure action, a foreclosing plaintiff must prove its entitlement to enforce the note and mortgage at the commencement of the suit. Reyes-Toledo, 139 Hawaiʻi at 367, 390 P.3d at 1254. A "holder" of an instrument such as a note is a "[p]erson entitled to enforce"

---

[22] Broer-DeShaw does not cite to any authority in support of the argument that BONYM was required to prove what it paid to acquire the Note. This argument is without merit.

it.  Id. at 369, 390 P.3d at 1256; HRS § 490:3-301 (2008); HRS § 490:1-201 (2008).  A note may be negotiated or its possession may be transferred by special indorsement or blank indorsement by a holder.  HRS § 490:3-201 (2008); HRS § 490:3-205 (2008). "When indorsed in blank, an instrument becomes payable to bearer."  Reyes-Toledo, 139 Hawaiʻi at 370, 390 P.3d at 1257 (citing HRS § 490:3-205(b)).  A "bearer" is a person or entity in possession of a note that is "payable to bearer or indorsed-in-blank."  HRS § 490:1-201.

Here, BONYM submitted admissible evidence establishing that it had been in possession of the original, indorsed-in-blank Note before the foreclosure action was commenced.  Lacava, the Compliance Manager for BONYM's counsel, submitted a declaration with the Reply to the Renewed MSJ, confirming receipt and review of the original Note on September 16, 2016, before the Complaint was filed on September 27, 2016.  Lacava's attached exhibits included a Bailee Letter she signed on September 16, 2016, acknowledging receipt of the original Note with indorsements, from Bayview; and a copy of her September 16, 2016 email to BONYM's counsel indicating receipt of the original loan documents.  BONYM's evidence sufficiently established its standing to enforce the Note under Reyes-Toledo.  The Circuit Court's conclusion that BONYM "is the holder of the Note" and "was the holder of the Note at the time this foreclosure action was commenced" was correct, and Broer-DeShaw's contentions in this regard are without merit.

### 4. Broer-DeShaw's challenges to the assignments of the Mortgage in POEs 4 and 5 lack merit.

Broer-DeShaw argues that BONYM is not the "owner" of the Note because the First Assignment was from MERS and that "MERS never had any interest in the Note," and "a mortgage without its Note is a legal nullity"; the assignment was

18

"forged" because it was signed by an "employee of Bank of America, not an employee of MERS";[23] and that a "Negotiable Instrument (like a Note) cannot be conveyed in a separate document."  Broer-DeShaw further claims that the Second Assignment "does not even attempt to convey any interest in the Note[,]" as it "attempts to convey only an interest in the Mortgage[.]"

Broer-DeShaw's arguments are difficult to discern.  We have already affirmed supra the Circuit Court's conclusion that BONYM had standing to enforce the Note.  Because "the security follows the debt," a mortgage may only be enforced by the person or entity entitled to enforce the Note.  Reyes-Toledo, 139 Hawaiʻi at 371 n.17, 390 P.3d at 1258 n.17 ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures." (citing Restatement (Third) of Property (Mortgages) § 5.4(c) (1997))).

Here, the record reflects that the Mortgage stated: "MERS is a separate corporation that is acting solely as a nominee for Lender [(First Magnus Financial Corporation)] and Lender's successors and assigns."  The Mortgage also provided: "The Note or a partial interest in the Note (together with this [Mortgage]) can be sold one or more times without prior notice to Borrower."  Thus, MERS had the authority under the Mortgage to execute the First Assignment through its Assistant Secretary. The Circuit Court pertinently determined:

> 5. The Mortgage was assigned by MERS to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-32CB, Mortgage Pass-Through Certificates, Series 2006-32CB (**BONYM CWALT**) pursuant to an Assignment of Mortgage ("First Assignment") recorded on September 2, 2011, in the Bureau of Conveyances of the State of Hawaii as Document No. 2011-141243. The Mortgage was then assigned to [BONYM]

---

[23]  The "forgery" claim appears to lack basis.  The First Assignment was signed by MERS, Inc., by "Christopher Herrera, Assistant Secretary."

<u>pursuant to an Assignment of Mortgage ("Second Assignment") recorded on November 24, 2015</u>, in the Bureau of Conveyances of the State of Hawaii as Document No. A-58060922.

Broer-DeShaw presents no discernible challenge to the Circuit Court's conclusion regarding the assignments.

> **5. Broer-DeShaw's contention in POE 8 that there was no evidence that the Notice of Default "was mailed" to them is without merit.**

Broer-DeShaw contends that the Notice of Default was not sent to them, and that the pertinent exhibit attached to BONYM's Renewed MSJ "shows the cover of an envelope addressed to [the DeShaws], but it is not postmarked and appears never to have been sent." Broer-DeShaw claims there was no "tracking number," "certificate of mailing," or "signature of the [DeShaws]."

The Note pertinently provides:

7. GIVING OF NOTICES

> Unless applicable law requires a different method, any notice that must be given to me [(the DeShaws)] under this Note will be given by delivering it or <u>by mailing it by first class mail to me at the Property Address</u> above or at a different address if I give the Note Holder a notice of that different address.

(Emphasis added.) The Mortgage also states, "Any notice to Borrower [(the DeShaws)] in connection with this Security Instrument <u>shall be deemed to have been given to Borrower when mailed by first class mail</u> or when actually delivered to Borrower's notice address if sent by other means." (Emphasis added.)

Here, the Circuit Court concluded that "[d]ue notice has been given to DeShaws." The record reflects that Exhibit D attached to BONYM's Renewed MSJ was a copy of a June 4, 2015 Notice of Default Letter, addressed to the DeShaws at the Subject Property address, and sent via "First-Class Mail." Broer-DeShaw's contention is without merit.

20

### 6. As to POE 9, the Circuit Court did not erroneously determine the amount owed based on inadmissible evidence.

Broer-DeShaw argues in the Amended Opening Brief that Nwabara's declaration for Bayview as the "new" loan servicer contained inadmissible hearsay testimony about "past servicers and past amounts," because the declaration contained "no personal knowledge of prior servicers procedures and records and no personal knowledge of all amounts paid by [Broer-DeShaw] in the past" and "flunks the *Mattos* test."[24]  In her Supplemental Brief,[25] Broer-DeShaw also asserts that Nwabara's declaration did not "satisfy[ ] the business records exception to the hearsay rule or the incorporated records doctrine with respect to the loan payment history documents[,]" and thus the records of the prior loan services were inadmissible under Verhagen.  BONYM maintains that Nwabara's declaration was compliant with Mattos and Verhagen, and was admissible.  We conclude that Nwabara's declaration was admissible, and Broer-DeShaw's challenge lacks merit.

"[A] declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration."  Mattos, 140 Hawai‘i at 30, 398 P.3d at 619.  In

---

[24]    In U.S. Bank N.A. v. Mattos, the supreme court held that "a declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration."  140 Hawai‘i 26, 30, 398 P.3d 615, 619 (2017).

[25]    On March 15, 2022, this court filed an Order for Supplemental Briefing, ordering the parties to submit supplemental briefing in light of the supreme court's opinion in U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawai‘i 315, 489 P.3d 419 (2021).  On March 29, 2022, both BONYM and Broer-DeShaw through counsel, filed Supplemental Briefs.

Mattos, the supreme court held that loan documents were not admissible through the "Contract Management Coordinator of OCWEN Loan Servicing, LLC [(**Ocwen**)], the servicer of U.S. Bank N.A. [(**U.S. Bank**)]," where the declaration did not state that the declarant was a "custodian of records for either U.S. Bank or Ocwen." Id. at 30-32, 398 P.3d at 619-21. Nwabara's declaration does not contain a similar infirmity, because Nwabara's declaration stated that he was a custodian of records for the loan servicer, Bayview; was "familiar with Bayview's books and records regarding the Loan, including Bayview's servicing records and copies of the applicable loan documents"; and was familiar with "the manner in which Bayview maintain[ed] its books and records, including computer records relating to the servicing of the Loan." Nwabara testified that Bayview "maintain[ed] all the day to day loan documents, records and accounting of payments on the Loan being foreclosed in this action."

In Verhagen, the supreme court explained that to establish the business records exception to the hearsay rule under the incorporated records doctrine, "records received from another business and incorporated into the receiving business' records may in some circumstances be regarded as 'created' by the receiving business." 149 Hawaiʻi at 325, 489 P.3d at 429 (quoting Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97). Thus, "when a record is treated as 'created' by the receiving business, a person is qualified to authenticate it if the person has 'enough familiarity with the record-keeping system of the business that "created" the record,' i.e., the receiving or incorporating business." Id. Three conditions are required to treat an incorporated record as "created" by the receiving business: "[1] the documents were incorporated and kept in the

normal course of business, [2] that the incorporating business typically relies upon the accuracy of the contents of the documents, and [3] the circumstances otherwise indicate the trustworthiness of the document." Id. (alterations in original) (quoting Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97). In Verhagen, the supreme court concluded that these three conditions were satisfied, where there was testimony that "JPMorgan Chase's [(the prior loan servicer)] records were incorporated into Caliber's [(the current loan servicer)] own and kept and maintained by Caliber in the ordinary course of its business"; that "Caliber used and relied on the incorporated records in the regular course of its loan servicing business"; and that the incorporated records went through a "due diligence phase" and were "reviewed" prior to being incorporated. Id. at 430-31, 489 P.3d at 326-27.

Similar to the declaration deemed sufficient in Verhagen, Nwabara testified that "Bayview's records include[d] and incorporate[d] records for the Loan obtained from First Magnus Financial Corporation and Countrywide [(the prior loan servicers)]"; the documents obtained from the prior servicers were "kept and maintained by Bayview in the ordinary course of its business" and "relied upon by Bayview"; the documents went through a "due diligence phase," consisting of a "review of [the] hard copy documents," including the "payment history," and the "accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer." We conclude that Nwabara's declaration as Bayview's custodian of records satisfied the three criteria under the incorporated records doctrine to incorporate the records of the prior loan servicers. The loan payment history documents were thus admissible under the HRE Rule 803(b)(6) business records exception to the hearsay rule,

and Broer-DeShaw's challenge to the determination of the amount owed is without merit.  See id.; Mattos, 140 Hawaiʻi at 30-32, 398 P.3d at 619-21.

**B. In the Fees Appeal, the Circuit Court retained jurisdiction to enter the Fees Order.**

The DeShaws' sole challenge in the Fees Appeal, is that the Circuit Court "lacked jurisdiction to alter or amend its prior order and judgment due to the DeShaw's [sic] filing of a notice of appeal on April 12, 2022" in the Confirmation Order Appeal.[26]  The DeShaws argue that, while the Circuit Court may retain jurisdiction to determine matters collateral or incidental to the judgment, the Fees Order "was not a matter that was collateral to or incedental [sic] to the [Confirmation Judgment] the DeShaws appealed from[.]"  The DeShaws assert that "[i]nstead, the issue of distribution of confirmation sale proceeds was the exact issue adjudicated by" the Confirmation Order and Confirmation Judgment,[27] and thus, the filing of the

_____

[26]     The DeShaws did not file an opposition to the motion, and the Circuit Court noted such in the Fees Order.

[27]     This is not an accurate characterization of the Confirmation Order and Confirmation Judgment.  Contrary to the DeShaws' claim, the "issue of distribution of confirmation sale proceeds" was not "the exact issue adjudicated" in the Confirmation Order and Confirmation Judgment.  The Confirmation Order directed payment of the previously ordered $609,002.91 amount, the Commissioner's fees and costs, and deferred the issue of distribution of the proceeds, stating that "excess sale proceeds" would be deposited with the court "until and unless" the Circuit Court gave further instruction "as to how any excess sale proceeds should be distributed pursuant to [HRS] § 667-3."

In the DeShaws' appeal from the Confirmation Order that this court dismissed, the DeShaws challenged a procedural aspect of the sale itself, as follows:

> The Circuit Court abused its discretion in confirming the foreclosure sale where the procedure employed by the Commissioner, and in particular his publications notifying persons of open houses only the day of and after said open houses occurred, was neither reasonable nor sufficient to obtain the highest possible price for the real estate being sold.

24

appeal "divested the Circuit Court of jurisdiction on the issues of confirmation of sale and distribution of proceeds."

BONYM argues that the Circuit Court was not divested of jurisdiction to grant the Motion for Fees and Amounts because the motion was "ancillary" and "incidental" to the Foreclosure Decree and Confirmation Order.[28] BONYM points out that the Fees Order did not "amount[] to an amendment of the Confirmation Order" because "both the Foreclosure Order and Confirmation Order establish that BONYM is entitled to collect attorneys' fees and costs, additional interest, and advances for real property taxes and insurance"; and the Fees Order "was necessary to establish the exact calculations of the amounts of interest and other fees and costs that BONYM was entitled to collect from the foreclosure sale proceeds."

We conclude, under the record and circumstances of this case, that the Fees Order fully adjudicated matters "incident" to the enforcement of the Foreclosure Decree in this case, including the final amount owed to BONYM and the final distribution of the sale proceeds pursuant to HRS §§ 667-3[29] and

_____

The DeShaws raised no challenge to the "issue of distribution of confirmation sale proceeds" in their Confirmation Appeal, despite their subsequent contention here that such distribution was the "exact issue" adjudicated in the Confirmation Order.

[28] BONYM cites to Cent. Pac. Bank v. Metcalfe, No. CAAP-14-0000851, 2015 WL 3549997, at *1 (App. June 4, 2015) (SDO) and Nationstar Mortg., LLC v. Lee, No. CAAP-17-0000788, 2018 WL 4627280, at *3 (App. Sept 27, 2018) (SDO). These cases are discussed infra.

[29] HRS § 667-3 (2016), entitled "Proceeds, how applied," provides for the distribution of foreclosure proceeds. It states:

> Mortgage and other creditors shall be entitled to payment according to the priority of their liens, and not pro rata; and judgments of foreclosure that are conducted in compliance with this part shall operate to extinguish the liens of subsequent mortgages and liens of the same property, without forcing prior mortgagees or lienors to their right of recovery. The surplus after payment of the mortgage foreclosed, shall be applied pro tanto to the next

25

667-10.[30]  As such, the Circuit Court retained jurisdiction to enter the Fees Order, and the DeShaws' contention is without merit.

"Notwithstanding the general effect of the filing of a notice of appeal, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal."  TSA Intern. Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 265, 990 P.2d 713, 735 (1999) (citations omitted) (emphasis added).  Foreclosure cases are "bifurcated into two separately appealable parts: (1) the decree of foreclosure and order of sale appealable pursuant to HRS § 667-51(a)(1)[;] and (2) all other orders that 'fall within the second part of the bifurcated proceedings.'"  Reyes-Toledo, 139 Hawaiʻi at 372, 390 P.3d at 1259 (quoting Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawaiʻi 11, 16, 304 P.3d 1192, 1197 (2013)).  The first separate and appealable part, the foreclosure decree, "is deemed final for appeal purposes

_____

junior mortgage or lien, and so on to the payment, wholly or in part, of mortgages and liens junior to the one assessed.

(Emphasis added.)

[30]    HRS § 667-10 (2016), entitled "Power unaffected by transfer; surplus after sale," provides for distribution of remaining proceeds to the owner of the property following an HRS § 667-3 distribution.  It states:

> No sale or transfer by the mortgagor shall impair or annul any right or power of attorney given in the mortgage to the mortgagee to sell or transfer the mortgaged property, as attorney or agent of the mortgagor, except as otherwise provided by chapters 501 and 502. When public sale is made of the mortgaged property under this part, distribution of the proceeds of the sale shall be as specified in section 667-3, and the remainder of the proceeds, if any, shall be paid over to the owner of the mortgaged property, after deducting the amount of all claims and all expenses attending the same.

(Emphasis added.)

notwithstanding the fact that many matters relating to it remain undetermined." Sturkie v. Han, 2 Haw. App. 140, 146, 627 P.2d 296, 302 (App. 1981); see Sec. Pac. Mortg. Corp. v. Miller, 71 Haw. 65, 69, 783 P.2d 855, 857 (1989) (recognizing the finality of a foreclosure decree for appeal purposes "although it contains provisions for the determination of matters incident to its administration and for disposition of the proceeds of the sale" (citation omitted)). The second "separately appealable" part includes "all other orders," which include "[o]rders confirming sale, deficiency judgments, orders directing the distribution of proceeds, and other orders issued subsequent to the decree of foreclosure." Reyes-Toledo, 139 Hawaiʻi at 372 n.20, 390 P.3d at 1259 n.20 (emphasis added); accord Sturkie, 2 Haw. App. at 146-47, 627 P.2d at 302 ("Matters such as the order of sale, appointment of commissioner, confirmation of sale, award of costs and fees, and award of deficiency judgment are deemed to be incidents to the enforcement of the decree of foreclosure, and errors unique to them are separately appealable, when they are fully adjudicated[.]") (internal citations omitted) (emphasis added).[31] "Incident" is defined as being "[d]ependent on, subordinate to, arising out of, or

---

[31] See also Ally Bank v. Hochroth, NOS. CAAP-17-0000911, CAAP-18-0000465, 2020 WL 1929172, at *5 (App. April 21, 2020) (SDO) (holding that the circuit court retained jurisdiction to award attorneys' fees and costs as "incidents to the enforcement" of the foreclosure decree despite a request for fees and costs being filed more than 14 days after the foreclosure judgment (quoting Han, 2 Haw. App. at 146, 627 P.2d at 301)); Lee, 2018 WL 4627280, at *2-4 (holding that the circuit court retained jurisdiction to award attorneys' fees and costs after the foreclosure decree and at the confirmation of sale proceedings because such "subsequent proceedings are simply incidents" to the enforcement of the foreclosure decree (citing Wise, 130 Hawaiʻi at 16, 304 P.3d at 1197); Metcalfe, 2015 WL 3549997, at *1-2 (holding that the circuit court retained jurisdiction to award attorneys' fees as "incidents to the enforcement" of the foreclosure decree even though motion for fees was filed more than 14 days after foreclosure decree and after notice of appeal from foreclosure decree was filed (emphasis omitted) (quoting Han, 2 Haw. App. at 146-47, 627 P.2d at 302)).

otherwise connected with (something else, usu[ally] of greater importance)." Black's Law Dictionary 879 (10th ed. 2014).

Here, the Circuit Court did not determine the final amount due to BONYM until after the foreclosure sale was completed.[32] The December 11, 2019 Foreclosure Decree partially determined the amount due and owing to BONYM as "$609,002.91" as of July 8, 2018, and also awarded items it left for subsequent determination. Thus, the Foreclosure Decree left "many matters . . . undetermined[,]" Sturkie, 2 Haw. App. at 146, 627 P.2d at 302, and specified that the Circuit Court would "subsequently determine" the amounts of the "interest, costs, expenses, late fees, other charges and attorneys' fees . . . at a subsequent hearing", with "all sums to be paid at the date of closing of the sale[.]" The Foreclosure Decree further ordered that these sums would be a valid "first lien" on the Subject Property "prior to all others." See HRS § 667-3 (providing that any "surplus after payment of the mortgage foreclosed, shall be applied pro tanto to the next junior mortgage or lien").

---

[32]     Establishing the amount owed on a mortgage is not one of the elements of a foreclosure claim. See HawaiiUSA Fed. Credit Union v. Monalim, 147 Hawaiʻi 33, 49 n.22, 464 P.3d 821 n.22 (2020) (holding that HRS § 667-1.5, which provides that the Circuit Court may assess the amount due in a foreclosure action, "does not burden the foreclosing party with the obligation to prove the amount due on the mortgage before the foreclosure sale because 'a deficiency judgment is rendered only after the sale of the mortgaged property.'") (citing Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 549, 654 P.2d 1370, 1374 (1982)). To prove entitlement to foreclosure, the lender must prove "the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice." Reyes-Toledo, 139 Hawaiʻi at 367, 390 P.3d at 1254 (citing Anderson, 3 Haw. App. at 551, 654 P.2d at 1375). In Anderson, this court explained that the lender "was not required to prove the exact amount owed under the Agreement until after the confirmation of the foreclosure sale." Anderson, 3 Haw. App. at 550, 654 P.2d at 1374. "The exact amounts of interest and other charges and credits, if any, could be determined after the confirmation of the foreclosure sale." Id. at 552, 654 P.2d at 1376.

The April 12, 2022 Confirmation Order did not contain the final determination on the additional amounts owed to BONYM. The Confirmation Order confirmed the sale of the Subject Property to Ye for $851,000.00; ordered payment of $13,419.79 for the Commissioner's fees and costs "from the proceeds of the sale"; and ordered the Commissioner to pay BONYM $609,002.91 from the sale proceeds as the amount due and owing as of July 8, 2018.  In addition, the Circuit Court found that "[t]he net sale proceeds will likely exceed the final total amount of [BONYM]'s judgment[,]" and ordered that:  "[e]xcess sale proceeds, if any, shall be deposited with the Clerk of the Court until and unless the Court provides further instruction as to how any excess sale proceeds should be distributed, pursuant to [HRS] § 667-3." Finally, the Confirmation Order provided that "[c]losing of the sale . . . shall occur within thirty-five (35) days from the date of entry of this Order."[33]  As to the undetermined additional amounts owed to BONYM, the Confirmation Order explicitly "reserve[d] jurisdiction to enter such future orders as may be necessary or appropriate to . . . any determination of any additional amounts due and owing to [BONYM], including attorney's fees/costs."  Thus, the Confirmation Order continued to leave undetermined the amounts for the attorneys' fees, interest, and additional expenses, and specified that the Circuit Court would provide further instruction as to the distribution of excess sale proceeds.

Here, the final amounts owed to BONYM from the foreclosure sale were not determined until the Fees Order was entered on May 23, 2022, following the May 17, 2022 closing, and after the April 12, 2022 Confirmation Appeal was filed.  The Fees Order finally determined and granted BONYM post-

---

[33]     We take judicial notice that the 35th day from the April 12, 2022 Confirmation Order was May 17, 2022.

29

foreclosure-decree interest, attorneys' fees, costs, and expenses pursuant to the Foreclosure Decree; the Fees Order arose out of, was dependent upon, and was thus "incidental" to the Foreclosure Decree.  See Black's Law Dictionary, at 879. The Fees Order also directed payment of these additional amounts from the proceeds of the foreclosure sale, which had resulted in a surplus rather than a deficiency.  Finally, the Fees Order ordered the Commissioner to deposit "with the Court" "any excess funds not paid to [BONYM] at closing of the sale," which would be "retained by the Court subject to further determination and order when all appeals in this case have been decided and exhausted."  Accordingly, the Circuit Court retained jurisdiction to enter the Fees Order even after the Confirmation Appeal was filed because the Fees Order determined the final amounts owed to BONYM upon the closing of the sale, and distributed the proceeds of the sale, all of which were incidents to the enforcement of the Foreclosure Decree. See Reyes-Toledo, 139 Hawaiʻi at 372 n.20, 390 P.3d at 1259 n.20; Sturkie, 2 Haw. App. at 146-47, 627 P.2d at 302; HRS §§ 667-1.5; 667-3; 667-10.

## IV.  CONCLUSION

For the foregoing reasons, in the Foreclosure Appeal, CAAP-19-0000865, we affirm the December 11, 2019 "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure filed November 14, 2018" and Judgment; and in the Fee Order Appeal, CAAP-22-0000408, we affirm the May 23, 2022 "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Attorney's Fees and Costs and Additional

Amounts Owed," all filed and entered by the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, November 29, 2023.

On the briefs:

Dennis Duane DeShaw
Self-Represented Defendant-
Appellant.

Susan Kay Broer-DeShaw
Self-Represented Defendant-
Appellant/Counterclaim
Plaintiff-Appellant.

Frederick J. Arensmeyer
for Defendant-Appellant
Dennis Duane DeShaw and
Defendant-Appellant/
Counterclaim Plaintiff-
Appellant Susan Kay
Broer-DeShaw.

David B. Rosen
(Aldridge Pite, LLP)
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge